# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:23-CV-378-RJC-SCR

| | | |
|---|---|---|
| **ERICA HORNE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION AND ORDER** |
| | ) | |
| **CREDIT ACCEPTANCE CORP.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**THIS MATTER** is before the Court on Defendant's "Motion to Dismiss or Compel Arbitration" (Doc. No. 4), as well as the Parties' briefs and exhibits. (Doc. Nos. 5, 7 & 8).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and the Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record and the applicable authority, Defendant's Motion (Doc. No. 4) will be granted in part and denied in part. Specifically, the Court will grant Defendant's Motion to Compel Arbitration, and the undersigned recommends that Defendant's Motion to Dismiss be denied.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On June 28, 2023, Plaintiff filed her three-page pro se Complaint, which in its entirety contains the following factual allegations:

> Plaintiff, a consumer, sent a written dispute on or about October 28, 2022, to Defendant, a data furnisher, disputing the completeness and/or accuracy of account Credit Acceptance Corp. – account number XXXXXXXXXX,[1] which was in a

---

[1] The Court has redacted the account number.

consumer reports [sic] concerning Plaintiff prepared, maintained and published to others by Defendant, and Defendant negligently and/or willfully failed to follow reasonable procedures to assure maximum accuracy of the date in consumer reports concerning Plaintiff, and investigate, delete, or modify the disputed information, and provide a response to Plaintiff within 30 days of receipt of Plaintiff's dispute.

(Compl., Doc. No. 1 at 1). Plaintiff seeks damages of $50,000 for violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq. (Id. at 2).

Attached to its principal brief, Defendant submits the Declaration of Kelly Namel (Doc. No. 5-1), which in turn attaches a Retail Installment Contract (the "Contract") (id. at 4-8), a Declaration Acknowledging Electronic Signature Process (id. at 10), and a Credit Acceptance Disclosure Form (id. at 12), all dated October 2, 2020.

These documents establish that the credit information of which Plaintiff complains arose from the following transaction. On October 2, 2020, Plaintiff entered into the Contract with Cardex Inc. for the purchase of a 2016 Mazda CX-5 ("Vehicle"). (Doc. No. 5-1 at 4-8). Defendant accepted assignment of the Contract, and is expressly designated as "Assignee." (Id. at 4, 12).

On the first page, in a standalone section the Contract contains the following notice:

**ARBITRATION**: This Contract contains an Arbitration Clause that states You and We may elect to resolve any dispute by arbitration and not by court action. See the Arbitration Clause on Page 5 of this Contract for the full terms and conditions of the agreement to arbitrate. By initialing below, you confirm that you have read, understand and agree to the terms and conditions in the Arbitration Clause.

(Id. at 4) (emphasis in original).

The fifth page of the Contract contains the terms of arbitration (the "Arbitration Agreement"), which states:

Either You or We may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes or counterclaims brought later in the lawsuit. If You or We elect to arbitrate a Dispute, this Arbitration Clause applies. A Dispute shall be fully resolved by binding arbitration . . . . If You or We elect to arbitrate a Dispute, neither You nor We will have the right to pursue that Dispute in Court or have a jury resolve that

dispute . . . . It is expressly agreed that this Contract evidences a transaction in interstate commerce. This Arbitration Clause is governed by the FAA and not by any state arbitration law.

(Id. at 8.)

The Arbitration Agreement defines "Dispute" as:

[A]ny controversy or claim between You and Us arising out of or in any way related to this Contract, including, but not limited to any default under this Contract, the collection of amounts due under this Contract, the purchase, sale, delivery, set-up, quality of the Vehicle, advertising for the Vehicle or its financing, or any product or service included in this Contract. "Dispute" shall have the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories . . . . In addition, "dispute" does not include disputes about the validity, enforceability, coverage or scope of this Arbitration Clause or any part thereof (including, without limitation, the Class Action Waiver described in the sixth paragraph of this Arbitration Clause, the last sentence of the seventh paragraph of this Arbitration Clause and/or this sentence); all such disputes are for a court and not an arbitrator to decide. However, any dispute or argument that concerns the validity or enforceability of the Contract as a whole is for the arbitrator, not a court, to decide.

(Id.) (emphasis added).

The Arbitration Agreement also provides that Defendant could enforce it stating "[i]n this Arbitration Clause, 'We' and 'Us' mean Seller and/or Seller's assignee (including, without limitation, Credit Acceptance Corporation) . . . ." (Id.)

Plaintiff had the right to reject the Arbitration Agreement:

**Your Right to Reject: If You don't want this Arbitration Clause to apply, You may reject it by mailing Us at P.O. Box 5070, Southfield, Michigan 48086-5070 a written rejection notice which describes the Contract and tells Us that You are rejecting this Arbitration Clause. A rejection notice is only effective if it is signed by all buyers, co-buyers and cosigners and the envelope that the rejection notice is sent in has a post mark of 30 days or less after the date of this Contract.**

(Id.) (emphasis in original). The Arbitration Agreement further provides that "**[i]f You reject this Arbitration Clause, that will not affect any other provision of this Contract or the status of Your Contract. If You don't reject this Arbitration Clause, it will be effective as of the date**

**of this Contract.**" (Id.) (emphasis in original).

Plaintiff electronically initialed each page of the Contract and electronically signed it. (Id. at 4-8). The record does not reflect, and Plaintiff does not contend, that she ever attempted to reject the Arbitration Agreement.

Defendant also submits a Declaration Acknowledging Electronic Signature. (Doc. No. 5-1 at 10). The document contains the following statement:

> By signing below, I, ERICA HORNE . . . hereby state that:
>
> 1. I read, understood and agreed to the eSign Consent Form and consented to use electronic signatures to sign all documents necessary to process a retail installment transaction with the Seller . . . .
>
> 2. I was given the opportunity to review a paper version of the retail installment contract I was being asked to sign prior to using electronic signatures to electronically sign the documents.
>
> 3. I was in physical control of the key board, mouse or other device to click a button, signature box, or initial box that applied my e-signature to the documents with the Intent to sign the documents as if I provided my handwritten signature on the documents.
>
> 4. I received a fully executed copy of the retail installment contract.

(Id.). The document reflects that Plaintiff signed it on October 2, 2020. (Id.). In response to Defendant's Motion, Plaintiff has not disputed her signature. (Doc. No. 7).

## II. DISCUSSION

On August 14, 2023, Defendant filed its "Motion to Dismiss or Compel Arbitration." (Doc. No. 4). Defendant asks the Court to dismiss Plaintiff's claims on the merits, and in the alternative send whatever claims may survive to arbitration. (Id. at 1). The Court concludes that the better practice is to first determine arbitrability, and if the matter is arbitrable, to compel arbitration. See Fair v. Shutterfly LLC, No. 0:21-1718-JMC-SVH, 2021 WL 11421826, at *6 (D.S.C. Aug. 4, 2021) (where Defendant submitted Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for

failure to state a claim and an alternative Motion to Compel Arbitration, the district court "decline[d] to address [the] Fed. R. Civ. P. 12(b)(6) arguments prior to . . . determin[ing] if a valid and enforceable arbitration agreement exists") (quoting <u>NLRB v. Comm. Motor Bus Co.</u>, 439 F.2d 965, 970 (4th Cir. 1971) ("The Fourth Circuit has made clear that the parties must arbitrate all matters, not explicitly excluded that reasonably fit within the language used.") (internal quotations omitted)).

This is particularly appropriate where Plaintiff's response is silent as to the issue of arbitrability. (Doc. No. 7). While the Court is mindful of Plaintiff's <u>pro se</u> status, Plaintiff's response contains no objection to the Motion to Compel Arbitration. As a result, the Motion to Compel Arbitration is unopposed.[2] <u>See Bigelow Corp. v. Hounds Town USA, LLC</u>, No. 323CV00134-FDW-SCR, 2023 WL 4939386, at *3 (W.D.N.C. Aug. 2, 2023) (citing <u>Grayson O Co. v. Agadir Int'l LLC</u>, 856 F.3d 307, 316 (4th Cir. 2017) and <u>City of Brevard v. CDM Smith, Inc.</u>, No. 1:20-cv-160-MR-WCM, 2021 WL 1015858, at *6 (W.D.N.C. Feb. 2, 2021)).

However, even where a motion goes unchallenged, courts still have an obligation to review the motion to ensure that the remedy is proper. <u>Bigelow Corp.</u>, 2023 WL 4939386, at *4 (quoting <u>Stevenson v. City of Seat Pleasant</u>, 743 F.3d 411, 416 n.3 (4th Cir. 2014)). After reviewing the Parties' briefs and applicable law, the Court concludes there is a valid and enforceable arbitration provision and this dispute is within the scope of that arbitration provision, as discussed below. Therefore, the Court need not reach Defendant's Motion to Dismiss for failure to state a claim, which may be resolved by the arbitrator.

---

[2] Plaintiff's <u>pro se</u> response seems to be aimed at her ability to be heard on the FCRA issues. Given that there is a binding and valid arbitration clause that broadly covers any disputes between the Parties, arbitration is the appropriate forum.

## A. **Standard of Review**

The Federal Arbitration Act ("FAA")[3] provides that written arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA requires courts to stay proceedings and compel arbitration in the event of a refusal to comply with a valid agreement to arbitrate. 9 U.S.C. § 3.[4]

"A district court . . . has no choice but to grant a motion to compel arbitration where a valid agreement exists and the issues in a case fall within its purview." Adkins v. Lab. Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002) (quoting United States v. Bankers Ins. Co., 245 F.3d 315, 319 (4th Cir. 2001)). "The burden is on the defendant to establish the existence of a binding contract to arbitrate the dispute." Hodge v. Toyota Motor Credit Corp., No. 1:22-CV-00001-MR-WCM, 2022 WL 2195022, at *2 (W.D.N.C. June 17, 2022) (quoting Rowland v. Sandy Morris Fin. & Estate Planning Servs. LLC, 993 F.3d 253, 258 (4th Cir. 2021)). When reviewing a motion to compel arbitration, courts construe the record in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. Forshaw Indus., Inc. v. Insurco, Ltd., 2 F. Supp. 3d 772, 785 (W.D.N.C. 2014).[5]

---

[3] The Contract provides that the FAA applies, which is undisputed. (Doc. No. 5-1 at 8).

[4] As Defendant points out, the Fourth Circuit has recognized that "[n]otwithstanding the terms of § 3, . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709–10 (4th Cir. 2001) (citing Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir.1992)). However, the Court observes that in Choice Hotels Int'l, Inc., the Fourth Circuit ultimately found that staying that case was procedurally appropriate based on the facts and circumstances of that case. The Fourth Circuit has further noted in Adkins that "[t]he FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration'" and that "[t]his stay-of-litigation provision is mandatory." 303 F.3d at 500 (citing 9 U.S.C. § 3).

[5] As the Fourth Circuit has recognized, "arbitration clauses are enforced by way of Federal Rule of Civil Procedure 12(b)(3)" and "in considering such motions, courts may examine evidence outside the pleadings—including . . . the contract containing the applicable arbitration clause." Amos v. Amazon Logistics, Inc., 74 F.4th 591, 593 n. 2. (4th Cir. 2023).

**B. Defendant's Motion to Compel Arbitration**

A litigant seeking to compel claims to arbitration under the FAA must establish that: "(1) a dispute exists between the parties; (2) the dispute falls within the scope of a written, valid agreement that includes an arbitration provision; (3) the parties' agreement relates to interstate or foreign commerce; and (4) the opposing party has failed or refused to arbitrate the dispute at hand." Amos v. Amazon Logistics, Inc., 74 F.4th 591, 595 (4th Cir. 2023) (citing Adkins, 303 F.3d at 500-01). Here, a dispute exists between the Parties that Plaintiff has refused to arbitrate, at least to date. The Parties' Contract relates to interstate commerce. (Doc. No. 5-1 at 8 "[i]t is expressly agreed that this Contract evidences a transaction in interstate commerce."). The only remaining issue for the Court to address is whether there is a written, valid agreement to arbitrate and, if so, whether the dispute in question falls within the scope of the agreement to arbitrate.

**1. Validity of the Agreement**

The Court first addresses whether there was a written, valid agreement to arbitrate. Defendant provided a Declaration attaching a copy of the Contract between the Parties. (Doc. No. 5-1). From a review of this Declaration and attached documents, Plaintiff specifically agreed to and electronically signed the Contract. (Id. at 10). She also electronically initialed each page. (Id. at 4-8). Defendant was expressly named under the bolded "Notice of Assignment" as Assignee of the Contract, and was assigned all rights in the Contract. (Id. at 7). Plaintiff agreed to the Assignment. (Id.).

By signing the Contract, Plaintiff also agreed to the Arbitration Agreement, including that a dispute "be fully resolved by binding arbitration" and that "neither You nor We will have the right to pursue that Dispute in Court or have a jury resolve that dispute . . . ." (Id. at 8). Plaintiff had a choice to opt-out of the Arbitration Agreement without impacting any other terms of the

Contract, but never exercised that option. (Id. at 2, 8). Further, although Plaintiff is pro se, nothing in Plaintiff's Complaint or her response to Defendant's Motion challenges the validity of the Arbitration Agreement. Considering all of this, the Court finds there is a valid and enforceable written Arbitration Agreement between Plaintiff and Defendant. Adkins, 303 F.3d at 500.

### 2. Scope of the Arbitration Agreement

In the Fourth Circuit, courts follow a two-step framework in assessing whether a dispute is arbitrable. Peabody Holding Co., LLC v. United Mine Workers of Am., 665 F.3d 96, 101 (4th Cir. 2012). "First, we determine *who* decides whether a particular dispute is arbitrable: the arbitrator or the court." Id. (emphasis in original). "Second, if we conclude that the court is the proper forum in which to adjudicate arbitrability, we then decide whether the dispute is, in fact, arbitrable." Id. "[T]he question of who decides arbitrability is itself a question of contract." Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 527 (2019); Peabody Holding Co., 665 F.3d at 102. Here, the Parties agreed that all issues are for the arbitrator to decide, except that "the validity, enforceability, coverage or scope of this Arbitration Clause or any part thereof . . . are for a court and not an arbitrator to decide." (Doc. No. 5-1 at 8). Thus, the Court must determine whether the Arbitration Agreement covers the dispute at issue here.

The Arbitration Agreement expressly provides that the Parties agreed to arbitrate "any controversy or claim . . . arising out of or in any way related to this Contract . . . ." (Id.) "'Dispute' shall have the broadest meaning possible, and includes contract claims, and claims based on tort, *violations of laws, statutes*, ordinances or *regulations* or any other legal or equitable theories." (Id.) (emphasis added).

Where "a contract contains an arbitration clause, 'a presumption of arbitrability exists,' and [to avoid arbitration] there must be 'positive assurance that the arbitration clause is not susceptible

of an interpretation that covers the asserted dispute.'" Krueger v. Angelos, 26 F.4th 212, 217 (4th Cir. 2022) (quoting AT&T Techs., Inc., v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986)). "Doubts should be resolved in favor of coverage." Id.

In the instant case, the Court finds that Plaintiff's claims are within the scope of the Arbitration Agreement because the language covers any dispute "arising out of or in any way related to the Contract." (Doc. No. 5-1 at 8). "Dispute" was purposefully meant to be broad and expressly contemplated "violations of laws," "statutes," and "regulations." (Id.) Plaintiff's claims center around a violation of law or statute, namely FCRA, or its implementing regulation, directly arising out of and relating to the relationship between the Parties, and reporting about payments made under the Contract. See Hodge, 2022 WL 2195022, at *1, 7 (similarly compelling FCRA claim, among other claims, to arbitration in a dispute where plaintiff failed to make monthly payments on a vehicle and faced repossession). Accordingly, the Court finds Plaintiff's claims fall squarely in the scope of the Arbitration Agreement, and should be arbitrated accordingly.

## III. ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion (Doc. No. 4) is **GRANTED IN PART**. Defendant's Motion to Compel Arbitration (Doc. No. 4) is **GRANTED** because Plaintiff's claims are within the scope of a valid and enforceable Arbitration Agreement. The Parties shall submit their dispute to arbitration according to the terms of the Contract. This matter is **STAYED** pending arbitration. The Parties shall file a status report within 90 days of this Order and each 90 days thereafter.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendant's Motion to Dismiss" (Doc. No. 4) be **DENIED WITHOUT PREJUDICE** to raising

the same or other issues in the arbitration proceeding.

## V. <u>TIME FOR OBJECTIONS</u>

The Parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to <u>de novo</u> review by the District Judge. <u>Diamond v. Colonial Life & Acc. Ins. Co.</u>, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude parties from raising such objections on appeal. <u>Id.</u> "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" <u>Martin v. Duffy</u>, 858 F.3d 239, 245 (4th Cir. 2017) (quoting <u>United States v. Midgette</u>, 478 F.3d 616, 622 (4th Cir. 2007)).

The Clerk is directed to send copies of this Memorandum and Recommendation and Order to the Parties' counsel <u>and to the Honorable Robert J. Conrad, Jr.</u>

**SO ORDERED AND RECOMMENDED.**

Signed: January 12, 2024

Susan C. Rodriguez
United States Magistrate Judge